594 A.2d 820

**Jeffrey R. HITCHCOCK and Susan H. Hitchcock, his wife**

**v.**

**ZONING BOARD OF ADJUSTMENT OF THE CITY OF PITTSBURGH.**

**Appeal of CITY OF PITTSBURGH, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 15, 1991.

Decided June 27, 1991.

April L. Marchese, for appellant.

Allan E. MacLeod, for appellee.

Before CRAIG, President Judge, McGINLEY, Judge and CRUMLISH, Senior Judge.

CRAIG, President Judge.

This zoning case presents ordinance interpretation questions. The general issue is whether a motorhome constitutes a "noncommercial automobile," which the Pittsburgh ordinance allows to be parked outdoors in a residential district, rather than only in a garage.

The City of Pittsburgh appeals an order of the Court of Common Pleas of Allegheny County, reversing a decision of the Zoning Board of Adjustment of the City of Pittsburgh that denied a request by Jeffrey and Susan Hitchcock (owners) to allow their motorhome, unoccupied, to be parked outdoors on their property, rather than solely within a garage.

The property is located in an R3 Multiple Family District and contains a 2–½ story, two-unit house with an 83–foot

driveway and a large rear parking area. The Pittsburgh Zoning Code requires that dwellings in R3 districts must have one parking stall for each dwelling unit. Pittsburgh Zoning Code, § 989.01.

On July 24, 1989, the owners applied to the Bureau of Building Inspection for an occupancy permit and building permit, proposing to use outdoor parking space for their motorhome and for one other outdoor parking stall.

The zoning administrator issued a statement of noncompliance to the owners, informing them that the motorhome is not an "automobile" under the Code. Because only "noncommercial automobiles" may be parked in the outdoor off-street parking spaces of dwellings, § 933.02 of the Code, the zoning administrator cited the owners for "outdoor parking of a motor home instead of in a garage."

The owners appealed the decision of the zoning administrator to the board, which affirmed the decision of the zoning administrator.

■ On appeal to the common pleas court, the trial judge held that the board "mischaracterized" the owners' request "as an application for a permanent use variance and a variance from the requirement that a two-family dwelling have two off-street parking spaces." The trial court, finding no support in the Code for the board's conclusion, reversed the board.[1]

The city here contends that a variance would be necessary because, as noted above, in an R3 Multiple–Family Residential District, § 933.02 provides that a minor parking area [2]—necessarily outdoors, not within a building—is exclusively for the parking of "noncommercial automobiles."

1. This court's scope of review where the trial court did not take additional evidence is limited to a determination of whether the zoning board of adjustment abused its discretion or committed an error of law. *Pittsburgh Outdoor Advertising Co. v. Zoning Board of Adjustment of the City of Pittsburgh,* 14 Pa. Commonwealth Ct. 54, 320 A.2d 916 (1974).

2. A "minor parking area" is a parking area that is an accessory use. Section 903.02(p) of the Code.

■ There is no dispute that the motorhome is noncommercial. However, the city asserts that a motorhome is a trailer rather than an automobile. Therefore, under the implicit mandate of § 933.02 of the Code, the city contends that the motorhome may be parked only in a garage.

The Code defines "automobile" as a "self-propelled, free-moving vehicle, primarily for conveyance on a street or roadway." Section 903.02(a). The same subsection defines "noncommercial automobile" as follows:

'Automobile, noncommercial' means an automobile designed and used primarily for transport of passengers, but not including a bus, taxicab, limousine or similar vehicle used for commercial transportation purposes.

The Code defines "trailer" as "any vehicle or portable structure equipped for and *used as sleeping or living quarters* for one or more persons, *mounted upon wheels and used as a conveyance on highways or streets,* and drawn by its own or other motive power." Section 903.02(t) (Emphasis added.)

There are no precedents for guidance because other municipalities use different wordings for these matters, and the courts have not construed these Pittsburgh provisions.

Analysis requires that this court first decide whether the Pittsburgh Code concepts of "noncommercial automobile" and "trailer" are mutually exclusive. The city takes the position that they are mutually exclusive. The decision of the Pittsburgh Zoning Board of Adjustment is consistent with that position.

Close comparison of these two ordinance definitions supports the city's view.

An apparent key element of the definition of "noncommercial automobile" is that it means an automobile *"designed and used primarily for transport of passengers."* (Emphasis added.) The adverb "primarily" must be noted.

By contrast, the Pittsburgh Code definition of "trailer" refers to a vehicle (or a portable structure) which is "equipped for and used as sleeping or living quarters."

Study of the Pittsburgh Code definition of "trailer" shows that it is broad enough to embrace at least two different types of vehicles which are equipped for and used as sleeping or living quarters.

First, the Pittsburgh Code definition of "trailer" clearly embraces a "travel trailer," which is commonly understood to be a towed vehicle equipped for sleeping and living on a non-permanent basis, e.g., at stops on a journey. And a travel trailer is designed and used for travel; i.e., as the definition states, it is "used as a conveyance on highways," conveying the travelers' living and sleeping facilities; the law prohibits the conveyance of passengers in a travel trailer. 75 Pa.C.S. § 3706(a), (b). In order to be thus useable on public highways without special permit, travel trailers have a width of eight feet or less.

Even more clearly, the Pittsburgh Code definition of "trailer" also embraces a motorhome, which the dictionary defines as

an automotive vehicle built on a truck or bus chassis and equipped as a self-contained traveling home—compare MOBILE HOME.

Webster's New Collegiate Dictionary 752 (1977). The Pittsburgh definition of "trailer" includes this concept because its wording is not limited to towed vehicles but embraces a "vehicle ... used as sleeping or living quarters ... and drawn by its own ... motive power." And a motorhome is even more definitively "used as a conveyance on highways" because motorhomes lawfully carry passengers (and driver) as well as living facilities.

This content of the Pittsburgh Code definition of "trailer," as including the concepts of travel trailers and motorhomes—both of which are generically categorized as recreational vehicles—indicates strongly that the ordinance intent was to describe a class of vehicles distinct from automobiles, which the ordinance characterizes as "primarily for transport of passengers."

To conclude that the ordinance definitions of "noncommercial automobile" and "trailer" are mutually exclusive is consistent with allowing outdoor parking for ordinary passenger automobiles but, in residential districts, requiring recreational vehicles—including motorhomes—to be parked indoors.

The cross-reference to "MOBILE HOME" in the dictionary definition of "motor home" necessarily prompts us to test the above interpretation by asking whether the Pittsburgh trailer definition also includes mobilehomes—the modern version of which is normally so large that it is really a manufactured modular residence which is not and cannot be parked in a residential garage.

The dictionary definition of "mobilehome" is

a trailer that is used as a permanent dwelling, is usually connected to utilities, and is designed without a permanent foundation—compare MOTOR HOME.

Webster's New Collegiate Dictionary 738 (1977). Although § 107(12.1) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10107(12.1), does not apply to the City of Pittsburgh, it defines "Mobilehome" in a similar manner as a "transportable, single family dwelling intended for permanent occupancy ... and constructed so that it can be used without a permanent foundation."

In accord with that concept of a mobilehome as a dwelling have been the decisions of the Pennsylvania Supreme Court, both before and after the 1968 MPC, holding that a mobilehome is entitled to be treated under zoning like a conventional residence. *Geiger v. Zoning Hearing Board of Township of North Whitehall,* 510 Pa. 231, 507 A.2d 361 (1986); *Anstine v. Zoning Board of Adjustment,* 411 Pa. 33, 190 A.2d 712 (1963).

Although a mobilehome, like any residence, *is* "used for sleeping or living quarters" and is transportable, it is not realistically "used as a conveyance on highways and streets...." And the law also prohibits the conveyance of

passengers in a mobilehome when it is being transported. 75 Pa.C.S. § 3706(a), (b). Mobilehomes, when mounted on wheels, are so equipped solely to be transportable to a permanent or semi-permanent location.

One can ride in a motorhome, and one can take journeys with a travel trailer, but mobilehomes are not for riding or traveling.

Therefore, the "trailer" definition which results in requiring recreational vehicles—i.e., travel trailers and motorhomes—to be garaged in residential areas, does not include mobilehomes and hence does not present the anomaly of requiring that a landowner provide indoor storage for a mobilehome, which cannot feasibly be stored in a garage.[3]

■ Yet another troublesome aspect of the "trailer" definition remains. Because it declares that it embraces vehicles "equipped for *and* used as sleeping or living quarters," does a vehicle constitute a "trailer" only when it is actually thus used? The record here indicates that the owners do not propose to use their motorhome as sleeping or living quarters while it is parked on their property. Mr. Hitchcock stated that "all we want to do is park the thing there. We don't want to use it for living in it...."

However, to treat a vehicle as a trailer when it is occupied for shelter purposes and then to deem it to be *not* a trailer while it moves over the roads, or when it is parked in an unoccupied condition, would involve an unworkable approach to administering such a definition. Zoning enforcement would be impractical and troublesome if the zoning officer were required to treat a recreational vehicle as properly parked when empty but illegally parked when occupied; the administrator could implement such a distinction only by investigating the status of the interior use of

3. Our view of mobilehomes in relation to the definition of "trailer" does *not* imply that a mobilehome can be lawfully "parked" outdoors on a residential lot. Because a mobilehome is a dwelling, siting it requires compliance with zoning and other requirements which govern residences. Placing a mobilehome constitutes the erection of a dwelling, requiring permits. *West Bradford Township v. MacMichael,* 21 Pa.Commonwealth Ct. 640, 347 A.2d 345 (1975).

the vehicle, and such investigations are certainly not feasible for zoning administration purposes. Zoning concerns itself with structures and their ongoing uses, not with discerning whether or not persons are "at home" at any particular moment.

This conclusion is consistent with the city's argument that § 933.02 of the Code contemplates that a trailer must be parked in a garage because it describes minor garage use in an R3 Multiple Family Residential District as follows:

C. Minor garage used exclusively for the parking of noncommercial automobiles or for the temporary keeping of small pleasure boats with trailer mounts therefore, *other wheeled vehicles designed to be drawn by passenger automobiles, normal household paraphernalia, and the like* .... (Emphasis added.)

Accordingly, interpretation of the ordinance terms requires a conclusion that the use of outdoor parking space for noncommercial automobiles cannot be extended to include the motorhome version of a recreational vehicle.

The zoning administrator acted correctly in refusing a permit for such parking. Because the record contains no evidence even touching upon the requisites for a variance from the requirement, this court must agree with the board and reverse the decision of the court of common pleas.

PELLEGRINI, J., did not participate in the decision in this case.

## ORDER

NOW, June 27, 1991, the order of the Court of Common Pleas of Allegheny County, Civil Division, No. S.A. 2764–89, dated September 7, 1990, is reversed.